STATE OF NEW JERSEY, PLAINTIFF, v.
LAWRENCE R. LEACH, JR., DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)

Decided June 25, 1976.

*Mr. Samuel R. DeLuca* for defendant.

*Mr. Kevin F. McCormick* for the State (*Mr. James T. O'Halloran,* Prosecutor of Hudson County, attorney).

GILMORE, J. J. D. R. C., Temporarily Assigned. This case has been presented for disposition in a highly unusual manner. After the waiver of a trial by jury both the State and the defense offered no other evidence excepting the following stipulation

That on March 19, 1974, the defendant, Lawrence R. Leach, Jr. possessed a firearm, colt 9mm semi-automatic pistol and that he did not have a permit to purchase, acquire, obtain or receive it and that he is not a licensed dealer. That the said weapon was received from P.O. Marvin Cooper for purposes of repairing same.

There seems to exist no valid reason why the matter should not be disposed of in this expeditious manner. In addition

to mutual request of both counsel, defendant was advised of what he is waiving and personally asked the court to decide the matter in its present form of presentation. Initially, it is observable that stipulations as to evidence of vital importance are not unique in criminal cases. *State v. McDavitt*, 62 *N. J.* 36 (1972) (polygraph test results); *State v. Taylor*, 139 *N. J. Super.* 301 (App. Div. 1976); *State v. Nobles*, 79 *N. J. Super.* 442 (App. Div. 1963) (statement of accomplice); *State v. Marchese*, 14 *N. J.* 16 (1953) (stipulation amending indictment).

■ Can the entire factual picture be stipulated? The nearest case in point is *State v. Laws*, 50 *N. J.* 159 (1967). There defendant in a murder prosecution offered to stipulate all facts as to the robbery and killing except the identity of the offenders. The State rejected the exceptance in the offer and the court sustained such rejection. The court's language did not negate such a procedure where full consent and unequivocal agreement was given by both parties.

■ And so the case will be decided with the court myopically viewing only that contained within the perimeter of the stipulation. While a court may draw all legitimate inferences from a stipulated factual situation; *Hood v. Francis*, 137 *N. J. Eq.* 200, 203 (Ch. 1945), I prefer to accept the words at their face value. Credibility will play no part in their assessment, nor will weight be a significant factor.

■ The question posed: Is defendant, who possesses a gun for the purpose of repairing same, guilty of a crime if he is not a licensed dealer or does not have a permit to purchase?

At oral argument there was amplification of the facts. It appears that the gun was delivered by the owner (who was authorized to have same) to defendant at the latter's home. Defendant had in fact accomplished repairs to the weapon when this case was born.

The Gun Control Law (*L.* 1966, *c.* 60; *N. J. S. A.* 2A:151-1 *et seq.*) was adjudicated as constitutional in *Burton v. Sills*, 53 *N. J.* 86 (1968). Its passage was prefaced

by public hearing in the Assembly (March 2, 1966); many suggestions were submitted by a group of sportsmen known as "The Citizens Committee for Firearms Legislation." This historical reference demonstrates that all concerned gave the problem more than a passing nod. All took a good look at the proposed law from many areas of focus. As a matter of fact, the Governor stated he was "particularly proud of the legislators who stood up to the vehement and often abusive opposition to this measure."

Turning our eyes again to the legislation before us we see no express provision denominating a "gun repairman." Recognition of the fact that guns would require repairing is gleaned from:

*N. J. S. A.* 2A:151–1 (f)  Manufacturer includes all persons * * *. It shall not include those persons who repair existing firearms or who receive and use raw materials or parts solely for the repair of existing firearms.

*N. J. S. A.* 2A:151–24  No retail dealer shall sell or expose for sale, or possess with intent to sell, any firearm, except that a retail dealer may be licensed to sell firearms as hereinafter provided.
(a) The business shall be carried on only in the building or buildings designated in the license, provided that repairs may be made by the dealer or his employees outside of such premises;

*N. J. S. A.* 2A:151–42  Nothing contained in section 2A:151–41 shall be construed:
(a) to prevent a person from keeping or carrying * * * any firearm * * * to or from any place where repairing is done, to have the same repaired;

But despite the fact that the Citizens Committee submitted definitions of "repairmen" and desired that a "retail dealer" should include the term "repairman," such language was not incorporated in the act. An examination of the forms em-

ployed by the State Police do not reveal that they concern themselves with "repairmen."

A liberal interpretation of the Gun Control Act might lead one to the conclusion that only dealers can repair guns. But we must never forget that statutory provisions relating to weapons are penal and demand strict construction. The things proscribed and for which a penalty may be imposed must be unambiguously and plainly within the purview of the statute. Any doubt as to their inclusion within the regulatory scheme would have to be resolved against such inclusion. *State v. Seng,* 89 *N. J. Super.* 58 (Law Div. 1965), rev'd on other gds. 91 *N. J. Super.* 50 (App. Div. 1966).

It is difficult to come to the conclusion that this defendant is guilty of a crime when we use the statute in question as the polestar:

> No person shall sell, give, transfer, assign or otherwise dispose of, nor receive, purchase or otherwise acquire a pistol or revolver unless the purchaser, assignee, donee, receiver or holder is licensed as a dealer under this chapter or has first secured a permit to purchase a pistol or revolver as provided by this article.

The State readily admits that defendant did not purchase the gun, but contends that he did "acquire" it. Not so. The gun was delivered to the defendant for redelivery when called for. The word "acquire" usually connotes ownership or title, whether attained by the individual or received by gift or inheritance. *Painter v. Painter,* 65 *N. J.* 196, 215 (1974). It may even involve the vesting of rights without title. *Albright v. Sussex Co. Lake & Park Comm'n,* 68 *N. J. L.* 523, 527 (Sup. Ct. 1902).

Viewing the statute again, the verbs "sell, give, transfer, assign or otherwise dispose of" appear to be the natural corollaries of "receive, purchase or otherwise acquire." By the ancient maxim of *noscitur a sociis* a word should be known by the company it keeps. The words "sell", "purchase" and the like, import the passage of title or a transaction creating

some interest in property. *Cf. N. J. S. A.* 12A:1–201 and 40A:12–2. Should not *acquire* be controlled by the words with which it is associated?

To rule otherwise would be to apply the statute to persons or conduct beyond the contemplation of the Legislature. As was held in *State v. Leonardo,* 109 *N. J. Super.* 442 (App. Div. 1970):

> We cannot extend the language of a statute beyond that used by the Legislature. *State v. Carbone,* 38 *N. J.* 19, 24 (1962). A penal statute must be strictly construed and will not be held to create a liability not clearly fixed by the words of enactment. *Neeld v. Giroux,* 24 *N. J.* 224, 229 (1957). Before one can be punished under such a statute, the condemned act must be plainly and unmistakably within the statute. *State v. Caez,* 81 *N. J. Super.* 315, 319 (App. Div. 1963). Any doubt as to the meaning thereof should be resolved in favor of a defendant. *State v. Wean,* 86 *N. J. Super.* 283, 289–91 (App. Div. 1965). [at 448]

The facts bespeak a bailment, not the transfer of title. Defendant was obligated to return the property to its owner. *Burton, supra,* asserts that

> The public purpose of the statute is entirely evident; it is designed to prevent criminals and other unfit elements from acquiring firearms. [53 *N. J.* at 93]

This defendant had possession of the weapon in his own home for the express purpose of repairing same. He never carried it on his person. He never intended to use same. He never had possession in any public place. His possession was certainly not one which would pose a threat to the public health, safety or welfare. We must never lose sight of the fact that the ultimate question in *this* stipulated situation is whether *this* defendant is guilty of *this* crime. *State v. Giardina,* 27 *N. J.* 313, 316 (1958); *State v. Suit,* 129 *N. J. Super.* 336, 350 (Law Div. 1974).

Defendant is found to be not guilty.